IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RONNELL R. PREWITT, )<br>)<br>Defendant. ) | Case No. 07-00189-01-CR-W-SOW |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Ronnell R. Prewitt's Motion to Suppress Evidence With Suggestions (doc. #23). For the reasons set forth below, it is recommended that the motion be denied.

## I. INTRODUCTION

On May 29, 2007, the Grand Jury returned a one count indictment against Ronnell R. Prewitt. The indictment charges that on December 5, 2006, defendant Prewitt, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, a Lorcin, Model L9MM, 9mm pistol, which had been transported in interstate commerce.

On December 14, 2007, the undersigned conducted an evidentiary hearing on the motion to suppress. Defendant Prewitt was represented by Assistant Federal Public Defender Stephen C. Moss. The Government was represented by Assistant United States Attorney Brent Venneman. The Government called Sergeant Keith Ericsson of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FACTS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. Sergeant Keith Ericsson with the Kansas City, Missouri Police Department has been employed as a police officer for eleven years. (Tr. at 3)

2. On December 5, 2006, Sergeant Ericsson conducted a car stop on a gray Ford Mustang at 27th and Wabash. It was a little bit after 11:30 p.m. (Tr. at 3-4, 18, 22)

3. There were two occupants in the car - a female driver and a male passenger. Sergeant Ericsson identified the passenger as defendant Ronnell Prewitt. (Tr. at 3-4)

4. Sergeant Ericsson had seen the Mustang earlier that evening parked on Chestnut Street next to a house located at 2720 East 27th Street. (Tr. at 4) The Mustang was parked on Chestnut which is a one-way street that runs south. The residence at 2720 East 27th Street is on the corner of 27th Street and Chestnut and the house faces south on 27th Street. (Tr. at 17)

5. At that time, Sergeant Ericsson had observed four or five individuals standing around the vehicle. (Tr. At 4, 16-17) The individuals were mostly males. (Tr. at 16-17) Sergeant Ericsson does not recall whether or not defendant Prewitt was around the car. (Tr. at 16-17)

6. Sergeant Ericsson had driven by the vehicle a couple of times. He did not have any time to surveil or watch it. He did not feel it was safe to do anything other than observation because of the amount of people around the vehicle. (Tr. at 5-6, 16-17) Sergeant Ericsson found this to be suspicious because of the location of the car next to the residence, there was not much activity at that time of night and because people were standing around the vehicle at that time of the evening. (Tr. at 5)

7. Prior to his promotion to Sergeant, Ericsson has been assigned to the Street Narcotics Unit. He knew the house at 2720 East 27th Street was known as a place of narcotics. The police had received many complaints about narcotics activity, including the sale and use of drugs. (Tr. at 4) Sergeant Ericsson had personally served a search warrant at the residence approximately six or seven months prior to the December 5th car stop. (Tr. at 5) Drugs were found at the house. (Tr. at 19) There were fifteen people involved in the search warrant but Sergeant Ericsson does not remember if defendant Prewitt was involved. (Tr. at 19)

8. Later in the evening, Sergeant Ericsson did not see anyone around the car so he sat on Chestnut Street and watched the car. (Tr. at 6, 16) His car was parked on Chestnut south of 26th Street. (Tr. at 18) He was about one hundred fifty yards from the car. (Tr. at 20) The police car lights were not on while Sergeant Ericsson was

2

watching the car. (Tr. at 18)

9. Sergeant Ericsson observed two individuals (defendant Prewitt and a female) exit the residence of 2720 East 27th Street through a back door and enter the vehicle. (Tr. at 6) They left in the vehicle proceeding west on 27th Street. As the vehicle pulled to the stop sign at 27th Street, Sergeant Ericsson observed that it failed to stop at the stop sign as it turned west on 27th Street. (Tr. at 6, 20)

10. Sergeant Ericsson immediately pulled behind the vehicle to conduct a traffic stop. (Tr. at 6) At that time, he activated the lights and siren of the police vehicle. The vehicle yielded appropriately. Because he was alone, Sergeant Ericsson gave his location, the traffic infraction and information about the vehicle on the police radio and waited for assistance from another unit. (Tr. at 7) A back up officer, Sergeant Wycoff, arrived in about a minute. (Tr. at 7, 21)

11. Sergeant Ericsson informed Sergeant Wycoff of the address of the residence that the individuals had left and stated that he wanted to get the occupants out of the vehicle. (Tr. at 7-8)

12. Sergeant Ericsson approached the driver's side of the vehicle and asked the driver to exit the vehicle. Sergeant Wycoff asked the passenger to exit the vehicle. (Tr. at 8) Sergeant Wycoff may have done a limited frisk of defendant Prewitt at that time. (Tr. at 23) Sergeant Ericsson told the individuals to stand at the back of the car and he informed the driver as to why he stopped her. (Tr. at 8)

13. Sergeant Ericsson asked the driver for her driver's license but she stated she did not have one. (Tr. at 8, 22) She further stated that the car she was driving was a rental car. (Tr. at 8)

14. Sergeant Ericsson placed the driver under arrest for driving without a driver's license. (Tr. at 9, 22) He placed her in handcuffs and obtained further information from her to run a records check. (Tr. at 9, 23) He also obtained information from Sergeant Wycoff regarding Prewitt's identity. (Tr. at 9) Sergeant Ericsson recognized Prewitt's name. (Tr. at 19)

15. Sergeant Ericsson went back to his police vehicle to run a records check on the two individuals through his mobile computer. (Tr. at 10) It took him a couple of minutes to run the check. (Tr. at 10) During that time, the driver and defendant Prewitt were standing at the back of the Mustang with Sergeant Wycoff. (Tr. at 10, 23) Defendant Prewitt was not handcuffed. (Tr. at 10)

16. The records check revealed that the female's driver's license was suspended by the Missouri Department of Revenue. (Tr. at 10) The check revealed that defendant Prewitt did not have any outstanding warrants but he was on probation for the sale

3

of narcotics. (Tr. at 10)

17. Sergeant Ericsson advised the driver that she was also under arrest for driving while her license was suspended. (Tr. at 10)

18. Because defendant Prewitt was on felony probation for narcotics and because he had come out of a house associated with drug activity, Sergeant Ericsson wanted to check the passenger compartment of the car for contraband before he allowed defendant Prewitt to leave. (Tr. at 24-25)

19. Sergeant Ericsson immediately began performing an inventory search of the vehicle. (Tr. at 11) He began his search on the passenger side of the vehicle and immediately discovered a handgun underneath the passenger's seat, directly below where defendant Prewitt was sitting. (Tr. at 11) He discovered the weapon when it was illuminated by his flashlight. (Tr. at 26) After he observed the weapon, he did not disturb it. Instead, he stood up and immediately placed defendant Prewitt in handcuffs because Prewitt was a felon and Sergeant Ericsson intended to arrest him for being a felon in possession of a handgun. (Tr. at 11)

20. When he placed defendant Prewitt in handcuffs, Sergeant Ericsson explained to him that he was being arrested for felon in possession of a firearm. (Tr. at 12) Defendant Prewitt was searched for weapons. (Tr. at 27) Sergeant Ericsson does not recall who searched defendant Prewitt. (Tr. at 28)

21. Another officer had arrived on the scene before defendant Prewitt was placed in handcuffs. (Tr. at 28)

22. The weapon was a Lorcin semi-automatic. (Tr. at 12) Defendant Prewitt stated that neither the gun nor the vehicle was his. (Tr. at 12)

23. It is standard procedure for the police to search vehicles that will be towed or impounded. (Tr. at 12) The Mustang was going to be towed and impounded. (Tr. at 12) Sergeant Ericsson searched the passenger's side of the vehicle and another officer searched the driver's side of the vehicle. (Tr. at 29)

24. This car stop was recorded with an in-car dash camera. (Tr. at 12) The in-car dash camera automatically starts when the police emergency equipment comes on. (Tr. at 15) Sergeant Ericsson previously reviewed the videotape from the in-car recorder and it accurately shows what transpired during the car stop. (Tr. at 13, 14)

25. Under ten minutes elapsed from the moment that Sergeant Ericsson got out of the car to contact the driver of the car to the moment he discovered the handgun. (Tr. at 13)

26. The handgun was processed for latent prints. (Tr. at 29) The handgun was brought

4

downtown to the Robbery Unit for this procedure. They take pictures of the handgun with the rounds of ammunition and use fingerprinting supplies to obtain fingerprints. (Tr. at 29-30)  This procedure was used with the Lorcin handgun. (Tr. at 30)

27. After it was processed for latent prints, the handgun was placed in a handgun bag and placed at the East Patrol Property Room. (Tr. at 30)

28. There were not any drugs found in the vehicle. (Tr. at 30)

29. There were not any drugs or drug paraphernalia found on defendant Prewitt's person. (Tr. at 30)  Sergeant Ericsson does not recall whether or not any large amounts of cash were found on defendant Prewitt. (Tr. at 30)

30. There were not any drugs or drug paraphernalia found on the driver of the vehicle. (Tr. at 30)

31. There was nothing recovered which is consistent with drug activity other than the firearm. (Tr. at 30)

32. Sergeant Wycoff did not write a report about the stop. (Tr. at 22)

## III. DISCUSSION

Defendant Prewitt seeks to suppress the Lorcin handgun recovered from the gray Mustang and DNA evidence obtained from a DNA sample produced by him at the police station on the basis that these items were obtained following an unreasonable stop, an unreasonable seizure and arrest and an unreasonable search of the vehicle.

The government has brought forth the issue of defendant Prewitt's standing to assert constitutional violations which preceded the recovery of evidence in this case. The government acknowledges that a mere passenger in a vehicle may have standing to challenge the detention of his person. (Doc. #25, p.4) The government, however, contends that a passenger, here defendant Prewitt, does not have standing to contest the actual search of the vehicle. The Court agrees.

In Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme Court held that a passenger in a vehicle does not have standing to challenge a search of the vehicle when he has neither "a property

5

interest nor a possessory interest in the automobile, nor any interest in the property seized." Id. at 148. In this case, defendant Prewitt stated that neither the gun nor the vehicle was his. (See Fact No. 22, supra) Therefore, it is clear that defendant Prewitt does not have standing to challenge the search of the vehicle.

The stop of the vehicle and subsequent detention and arrest of defendant Prewitt are another matter. In the recent case of Brendlin v. California, ____ U.S. ____ , 127 S.Ct. 2400 (2007), the Supreme Court recognized that a stop of a vehicle results in a seizure of both the driver and the passenger. Id. at 2408 (citing 1W. Ringel, Searches & Seizures, Arrests and Confessions § 11:20, p. 11-98 (2d ed. 2007)). Thus, "[i]f either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." Id . at 2408 (quoting 6 W. LaFave, Search and Seizure §11.3(e), pp. 194, 195 and n. 277 (4th ed. 2004 and Supp. 2007)). Therefore, defendant Prewitt may seek suppression of the handgun and the DNA evidence as fruits of an unconstitutional stop, seizure or arrest. As stated above, however, defendant Prewitt does not have standing to assert suppression of the handgun and the DNA evidence based solely on an unconstitutional search of the vehicle.

There is no question that the stop of the vehicle was lawful in this case. As the Eighth Circuit Court of Appeals has observed, "a traffic violation-however minor-creates probable cause to stop the driver of a vehicle." United States v. Lyons, 486 F.3d 367,371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, Sergeant Ericsson

6

observed the vehicle fail to stop at a stop sign as it turned west onto 27th Street. (See Fact. No. 9, supra) Therefore, the stop of the vehicle due to the traffic violation was justified and suppression of the handgun and DNA evidence due to an unreasonable stop is unwarranted.

During a lawful traffic stop, an officer may order a passenger out of the car as a precautionary measure, without a reasonable suspicion that the passenger poses a safety risk. See Brendlin v. California, 127 S.Ct. 2400, 2407 (2007); Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). The officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time consuming tasks related to the traffic violation. See United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007). A reasonable investigation of a traffic stop may include asking for the driver's license and registration and asking the driver about his destination and purpose. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir, 1994), cert. denied, 514 U.S. 1134 (1995). An officer may undertake similar questioning of passengers. See United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).

Defendant Prewitt was detained during the traffic stop while Sergeant Ericsson ran a records check on the driver of the car and on defendant. He was not handcuffed. (See Fact No. 15, supra) The records check revealed that defendant Prewitt was on probation for a felony narcotics conviction. (See Fact No. 16, supra) The records check was completed in just a few minutes. (See Fact No. 15, supra) There is nothing in these facts which would support an unreasonable seizure of defendant Prewitt.

The arrest of defendant Prewitt was supported by probable cause and was therefore proper. Probable cause depends on whether at the moment the arrest was made the facts and circumstances were sufficient to warrant a prudent person in believing that the person had committed or was

7

committing an offense. See United States v. Neumann, 585 F.2d 355, 357 (8th Cir. 1978)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). In this case, Sergeant Ericsson searched the passenger compartment of the Mustang immediately after he arrested the driver of the vehicle.[1] (See Fact Nos. 17 and 19, supra) It was at this time that Sergeant Ericsson observed the Lorcin handgun underneath the passenger seat of the Mustang. (See Fact No. 19, supra) The existence of the handgun within close proximity to defendant Prewitt, the fact that defendant Prewitt was a felon and had been convicted of the sale of narcotics and the fact that defendant Prewitt had been inside a residence known for drug activity gave Sergeant Ericsson probable cause to arrest defendant Prewitt for being a felon in possession of a handgun.

## IV. CONCLUSION

Based upon the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Ronnell R. Prewitt's Motion to Suppress Evidence With Suggestions (doc. #23).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

---

[1] When there has been a lawful custodial arrest of an occupant of a vehicle, a police officer may, contemporaneous with the arrest, search the passenger compartment of the vehicle. See United States v. Belton, 453 U.S. 454, 460 (1981).

                                                    */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                                UNITED STATES MAGISTRATE JUDGE